IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

AMBER C. YERENA                                                                    PLAINTIFF

V.                              NO. 12-3118

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Amber C. Yerena, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her applications for DIB and SSI on May 26, 2010, alleging an inability to work since December 15, 2008, due to back problems, neurological problems, loss of movement with entire left side, "has woke up with left side of body paralyzed," back surgery, and adult ADHD. (Tr. 114-122, 146, 149). An administrative hearing was held on February 11, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 30-56).

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

By written decision dated March 11, 2011, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - degenerative disc disease of the lumbar spine. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (Tr. 13). With the help of the vocational expert (VE), the ALJ determined that Plaintiff was capable of performing past relevant work as a poultry line worker, short order cook, cashier, and surgical technician. (Tr. 15).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on July 14, 2010. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). The case is before the undersigned pursuant to the consent of the parties. (Doc. 3). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7, 8).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.

AO72A
(Rev. 8/82)

3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national

economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following arguments on appeal: 1) Whether there is substantial evidence from the record as a whole to support the ALJ's decision that Plaintiff is not disabled; and 2) Whether the ALJ erred in denying Plaintiff's claim due to failure to undergo recommended procedures or seek charitable procedures. (Doc. 7).

**A.  Whether Substantial Evidence Supports the ALJ's Findings:**

As early as 2000, Plaintiff began having low back and right hip pain. (Tr. 327). Upon review of an MRI of Plaintiff's back, her treating physician, Dr. Cyril A. Raben, MDPA, NWA Spine & Orthopaedic Assoc., LLC, found Plaintiff had a "very large disc herniation at L4/5 seated to the right of midline." (Tr. 324). On April 8, 2003, Plaintiff complained to Dr. Raben of constant stabbing as well as numbness in her low back and right leg. (Tr. 319). In 2000 and 2003, Plaintiff received epidural steroid injections from Dr. Raben. (Tr. 318, 326).

In June of 2004, Dr. Raben performed a decompression of the L4/5 disc space on the left with removal of the herniation. (Tr. 316). For the remainder of 2004, Plaintiff reported she felt at least 90% better. (Tr. 311-314).

Over one year later, on October 19, 2005, Plaintiff renewed her complaints of back pain with Carla Boyd, R.H.P., of Dr. Raben's office. (Tr. 309). Plaintiff reported that she fell over the summer, but was checked with CT and MRI scanning and there was not anything such as a disc

herniation, fracture or stenosis noted. (Tr. 309). At that time, Plaintiff was working full time. (Tr. 309). Her gait and station were reported as normal, she was able to heel and toe walk with no difficulty, and her deep tendon reflexes were intact and symmetrical for patellar and Achilles reflexes, although she occasionally noted decreased sensation in the left leg. (Tr. 310).

On April 27, 2006, Plaintiff reported to Dr. Raben that starting two months prior, she began aching in her back, especially the left side iliac region. (Tr. 235). She was taking no medications at that time, and Dr. Raben assessed Plaintiff with L-spine disc herniation; chronic pain, "post lamy syn." (Tr. 237). An MRI of Plaintiff's Lumbar Spine, performed on May 31, 2006, revealed the following:

> At L4-5, there appears to be a defect in the right lamina with some associated enhancement surrounding the thecal sac, likely postoperative change. There is a broad-based annular disc bulge but without definitive neural impingement or neuroforaminal narrowing. Moderate disc space narrowing and disc desiccation is seen. Otherwise, this study is unremarkable.

(Tr. 240).

On June 6, 2006, Plaintiff received an epidural steroid injection from Dr. Raben, who diagnosed Plaintiff with L-spine disc degeneration and L-spine disc herniation. (Tr. 233). It was thereafter noted on July 14, 2006, that Plaintiff did not show up for an appointment with Dr. Raben. (Tr. 228).

Over one and one-half years later, on November 16, 2007, Plaintiff went to Ozark Guidance, Inc., for evaluation. She was diagnosed as follows:

    Axis 1:    Depressive Disorder NOS
                Amphetamine Abuse
                Rule out ADHD-combined type
    Axis 2:    Borderline Personality Disorder

    Axis 3:   Irritable Bowel Syndrome
    Axis 4:   Problems with primary support group
           Educational problems
           Occupational problems
           Housing problems
           Economic problems
           Problems with Access to Health Care Service
    Axis 5:   GAF - 45

(Tr. 391). Plaintiff reported using cannabis to sleep when her pain was bad because she did not like to take pills. (Tr. 397). On January 29, 2008, Plaintiff was discharged from Ozark Guidance, Inc., because she lost contact. (Tr. 242).

  On October 3, 2008, Plaintiff presented to the emergency room at St. Johns Hospital in Berryville, Arkansas, complaining of left side numbness. (Tr. 350). On October 20, 2008, Plaintiff presented herself to Crossroads Medical Clinic, seeking referral to a neurologist. (Tr. 220). She was then diagnosed with neuropathy in "OT dis;" Neuralgia/neuritis unspec., and "postsurgical states OT." (Tr. 220).

  On December 23, 2008, Plaintiff was seen by Dr. Glady Jacob, of Branson Neurology and Pain Center. (Tr. 208-210). At that time Plaintiff reported that she had been getting more headaches the previous few months. (Tr. 208). Dr. Jacob reported that Plaintiff reported smoking marijuana about 1-2 times per week. (Tr. 209). Plaintiff was taking ibuprofen as needed for pain, and was reported as having no depression or anxiety. (Tr. 209). Her stance was steady and the impression given was lumbosacral spondylosis. (Tr. 210). Dr. Jacob recommended that they check an MRI of Plaintiff's lumbar spine, as well as an EMG/nerve conduction study to check for nerve entrapment. (Tr. 210). However, Dr. Jacob reported that Plaintiff told her that she could not do those tests at that time, as she did not have insurance. Dr. Jacob recommended that

Plaintiff apply for Skaggs Charity and if she was approved for financial assistance, Dr. Jacob reported that she would go ahead and check an MRI of her back as well as an EMG/nerve conduction study. Following those tests, Dr. Jacob stated she would evaluate Plaintiff for pain injections. (Tr. 210). There is no indication in the record that Plaintiff ever applied for "Skaggs Charity" or underwent the EMG/nerve conduction studies.

Over a year later, on March 11, 2010, Plaintiff presented herself to Crossroads Medical Clinic, and it was reported that Plaintiff's mood had been good, and she was overall doing well. (Tr. 216). She was diagnosed with attention deficit disorder of childhood with hyperactivity. (Tr. 216).

In a Mental RFC Assessment and Psychiatric Review Technique form, completed by non-examining consultant Dr. Winston Brown on June 29, 2010, Plaintiff was found to have a mild degree of limitation in restriction of activities of daily living; a moderate degree of limitation in difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. (Tr. 261). Dr. Brown found that Plaintiff was able to perform work where interpersonal contact was incidental to the work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, and little judgment; and where supervision required was simple, direct and concrete (unskilled). (Tr. 265).

A Physical RFC Assessment was completed by Dr. Karmen Hopkins on July 1, 2010, wherein Dr. Hopkins found that Plaintiff was able to perform light work, with occasional stooping and crouching. (Tr. 270). Thereafter, Plaintiff visited Crossroads Medical Clinic four more times in 2010, complaining of back pain and numbness on her left side ; back pain on her

right side and feeling her head was "shakey" at times; complaining of pain in her head, dizziness, and a sore spot on the left side of her head ; and that her head was getting worse (Tr. 278, 402, 406, 407). A CT of Plaintiff's head without contrast was performed on December 8, 2010, which revealed a normal non-contrast head CT. (Tr. 409). On December 23, 2010, Plaintiff was seen at ECHO by Dr. Kresse and was assessed with lumbar stenosis, possible herniated disc; herniated disc w/neuropathy; and migraine headaches. (Tr. 411).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In this case, the ALJ went to great lengths to discuss the evidence in the record and the treatment prescribed by various physicians who examined Plaintiff. He concluded that Plaintiff's degenerative disc disease and any related limitations were not severe to a degree that would limit activities beyond the scope of his RFC assessment. (Tr. 14). He also factored in Plaintiff's

complaints of pain and discomfort, and concluded that Plaintiff's pain relief seeking behavior and treatment were not indicative of a degree of pain that would limit activities beyond the scope of his RFC. (Tr. 15).

Finally, the ALJ addressed Plaintiff's daily activities, and correctly noted that Plaintiff cared for her two younger children with the help of her 16-year-old daughter. Plaintiff also prepared meals, did laundry, and drove. (Tr. 49-52). In a June 8, 2010 Function Report - Adult, Plaintiff reported that she cooked, cleaned, and bathed her six year old, went outside once a day, drove, shopped for groceries and went to church when she could. (Tr. 169-173).

Clearly, the ALJ considered all of the medical evidence as well as Plaintiff's complaints of pain. He also considered Plaintiff's daily activities, and concluded that Plaintiff retained the RFC to perform her past relevant work.

Plaintiff argues that substantial evidence supports Plaintiff is limited to unskilled work and that two of Plaintiff's past jobs were performed at the semi-skilled and skilled level. "The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work." Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999).

The Court notes in this case the ALJ relied upon the testimony of a VE, who testified that the poultry laborer line worker was light, unskilled; the short order cook was light, semi-skilled; the video rental clerk was the same as a cashier II, which is light, unskilled; and the surgical technician was light, skilled. (Tr. 40). Therefore, while Plaintiff argues two of the positions were at the skilled level, two of the positions were unskilled, and Plaintiff's argument is without merit.

AO72A
(Rev. 8/82)

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC assessment and his conclusion that Plaintiff can return to her past relevant work.

**B.     Failure to Undergo Recommended Procedures or Seek Charitable Procedures**:

Plaintiff argues that the ALJ found that she failed to follow treatment, but did not determine whether Plaintiff was justified in doing so. It is argued that Plaintiff's lack of insurance and financial resources limited her ability to access certain diagnostic tests.

"[T]he Eighth circuit has specifically held that plaintiff's lack of financial resources does not excuse her failure to seek medical treatment absent evidence that plaintiff sought low or no-cost treatment or that any provider denied her treatment because of her financial situation." Norman v. Apfel, 48 F.Supp. 2d 905, 909 (W.D. Mo. 1999).  "Economic justifications for the lack of treatment can be relevant to a disability determination." Clark v. Shalala, 28 F.3d. 828, 831, n.4 (8th Cir. 1994).

In his opinion, the ALJ noted that Dr. Jacob recommended that Plaintiff apply for "Skaggs Charity," but that there was no evidence that Plaintiff followed up on that recommendation. (Tr. 14). Plaintiff argues that there is also "no evidence" she did not try but did not qualify. (Doc. 7 at p. 15). However, it is Plaintiff's burden of proving disability, and the Court is inclined to believe that if Plaintiff did pursue the Skaggs Charity avenue and was not qualified, she would have provided the ALJ or the Court with evidence of such.  Furthermore, Plaintiff was somehow able to afford to smoke marijuana one to two times a week.  Plaintiff offered no testimony or other evidence that she had been denied further treatment or access to medication on account of financial constraints.  Id.

AO72A
(Rev. 8/82)

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff failed to follow recommended treatment.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 12th day of September, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE